CHICAGO STYLE PRODUCTIONS, INC., Plaintiff-Appellant, v. CHICAGO SUN TIMES, INC., Defendant-Appellee.

First District (2nd Division)   No. 1—99—2526

Opinion filed May 2, 2000.

Arthur S. Gold, of Gold, Rosenfeld & Coulson, of Chicago, for appellant.

Damon E. Dunn, Glenn A. Rice, and Maria DiStravolo Elliott, all of Levin & Funkhouser, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

The plaintiff brought this action under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1996)). The plaintiff alleged that the defendant newspaper had stolen its idea for a television show to be produced in conjunction with a series of newspaper articles. The trial court granted the defendant's motion to dismiss under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1996)), on the basis that the plaintiff's action was preempted by the federal Copyright Act (17 U.S.C. § 101 *et seq.* (1976)). The trial court did not reach the defendant's additional argument that the exhibits demonstrated that the series of newspaper articles it published was not similar enough to the television show to support any charge that it had copied the plaintiff's work.

The plaintiff now appeals, arguing that the trial court erred in finding that its cause of action was preempted.

We affirm.

## BACKGROUND

The plaintiff, Chicago Style Productions, Inc. (Chicago Style), prepared a television show about local people and events called "Chicago Style." The television program was to emphasize "lighthearted personality-driven features." The distinctive characteristic of the show was that it was designed to promote a newspaper and to be tied in with articles from the newspaper. Chicago Style attempted to market its show to the defendant, the Chicago Sun Times, Inc. (the Sun Times).

Jim Elliott, the president of Chicago Style, presented the idea to the defendant in a meeting with George Berger, the Sun Times' director of special events, in April 1997. About a month later, Elliott and Steve Grein, the vice president of Chicago Style, met with Eve Minogue, the marketing director for the Sun Times. Minogue expressed interest in the idea of the television show, and Elliott and Grein agreed to put together a formal proposal and a pilot production video.

Elliott and Grein presented the proposal and showed the pilot video in another meeting with Berger and Minogue in February 1998. The presentation outlined the cost of the program to the defendant, as well as projected revenues. Nine days later, the defendant notified the

plaintiff that it had decided not to participate in the proposed venture. The plaintiff then decided to market its proposal to other newspapers.

Four days later, a series of articles entitled "Chicago Style" commenced in the Sunday Chicago Sun Times. The plaintiff alleges that the articles reflected the "essence, strategy and focus" of its proposed program. According to the plaintiff, the Sun Times stole the "Chicago Style" idea and presented it as its own. The plaintiff claims that this has destroyed its ability to market the program to other newspapers.

The plaintiff filed a one-count complaint alleging violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 1996)) (Consumer Fraud Act). The defendant filed a section 2—619 motion to dismiss on the grounds that: (1) the plaintiff's Consumer Fraud Act claim was preempted by the federal Copyright Act (17 U.S.C. § 101 *et seq.* (1976)); and (2) even if the claim were not preempted, the exhibits clearly showed that the defendant had not copied the plaintiff's idea. The trial court granted the motion on the preemption grounds. The defendant now appeals.

ANALYSIS

■ In 1976 Congress amended federal copyright law by adding a preemption provision.

> "On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any state." 17 U.S.C. § 301(a) (1976).

In *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663 (7th Cir. 1986), the seventh circuit outlined a two-prong test for determining whether a state law claim was preempted under section 301 of the Copyright Act. "First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in § 102. Second, the right must be equivalent to any of the rights specified in § 106." *Baltimore Orioles*, 805 F.2d at 674. In order for a claim under a state statute not to be considered "equivalent" to a copyright claim under this test, the state claim must require an additional element that is *qualitatively* different from those necessary for copyright infringement. *Xerox Corp. v. Apple Computer, Inc.*, 734 F. Supp. 1542, 1550 (N.D. Cal. 1990); *Maro-*

*bie—FL, Inc. v. National Ass'n of Fire Equipment Distributors*, 983 F. Supp. 1167, 1180 (N.D. Ill. 1997). The plaintiff cites cases that seem to enunciate a narrower test for preemption. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 40 L. Ed. 2d 315, 94 S. Ct. 1879 (1974); *F.E.L. Publications, Ltd. v. National Conference of Catholic Bishops*, 466 F. Supp. 1034 (N.D. Ill. 1978). However, these cases dealt with facts that arose before section 301(a) was added in 1976.

With regard to the first prong of the *Baltimore Orioles* test, in our view the ideas that were allegedly copied in the instant case were fixed in tangible form and came within the subject matter of copyright. The plaintiff, correctly noting that one cannot copyright an idea, as opposed to a particular expression of that idea (*Nash v. CBS, Inc.*, 899 F.2d 1537, 1542 (7th Cir. 1990)), argues that its idea was not fixed in a particular form of expression and thus it did not come within the protective scope of copyright law. In fact, however, the pilot video and the formal proposal constituted a tangible expression of the plaintiff's idea. The plaintiff in effect admitted as much in its complaint when it alleged similarity between the pilot video and the newspaper articles "down to the accompanying graphics."

■ The plaintiff responds that even if the defendant copied some of its expression, this suit concerns the copying of its idea, which it could not copyright. But we do not think that the plaintiff can separate out the idea that was stolen in this alleged act of copying and base a separate state law claim on that. "Copyrightable material often contains uncopyrightable elements within it, but Section 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements." *National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 849 (2d Cir. 1997).

■ With regard to the second prong of the *Baltimore Orioles* test, we agree with the trial court that the plaintiff is attempting in this suit to vindicate rights equivalent to those protected by the Copyright Act. Many states prohibit by statute the "passing off" of products. "Passing off" occurs when the defendant misleads the public into thinking that the defendant's product is actually the plaintiff's. *Xerox*, 734 F. Supp. at 1550. But the activity allegedly engaged in by the Sun Times is the opposite—"reverse passing off." In other words, the plaintiff alleges that the defendant misled the public into thinking that the plaintiff's product was the defendant's. *Xerox*, 734 F. Supp. at 1550. The case law is clear that "[c]laims premised on reverse passing off are preempted under the Act." *Marobie—FL*, 983 F. Supp. at 1181.

In support of its argument that its claim is not preempted, the plaintiff cites *Stillman v. Leo Burnett Co.*, 720 F. Supp. 1353 (N.D. Ill. 1989). The plaintiff in *Stillman* created a distinctive "silent" televi-

sion commercial for Eastern Airlines. The commercial aired in Canada. The defendant, after seeing the commercial, produced a similar one for United Airlines to be shown in the United States. In subsequent interviews the defendant claimed that it had come up with the idea for the commercial by "lucky inspiration." *Stillman*, 720 F. Supp. at 1356. The plaintiff sued for copyright infringement as well as for violation of the Consumer Fraud Act. The basis for the Consumer Fraud Act claim was that the defendant had falsely claimed credit for the idea of the commercial. *Stillman*, 720 F. Supp. at 1362. The defendant moved for summary judgment on the Consumer Fraud Act claim, arguing that it was preempted by the Copyright Act. The court denied the motion. Judge Duff allowed the Consumer Fraud Act claim, not on the basis that the defendant had falsely claimed credit for the plaintiff's idea in the very act of making its similar commercial (he expressly declined to reach that issue), but on the basis that the defendant had falsely claimed credit for the plaintiff's idea in the subsequent interviews. *Stillman*, 720 F. Supp. at 1362.

According to *Stillman*, the state law claim and the copyright claim had two different purposes:

> "The copyright laws serve to protect Stillman's right to reap the benefits of the particular expression he employed in creating the Eastern silent commercial. The state laws, by contrast, will protect Stillman's right to prevent others from fraudulently taking credit for, and presumably benefitting in the future from Stillman's ability to develop novel ideas." *Stillman*, 720 F. Supp. at 1363.

The plaintiff claims that it is only pursuing the latter type of claim and, thus, copyright law preemption should not apply.

We do not find *Stillman* controlling in the instant case, for the plaintiff has not alleged that the Sun Times did anything to claim credit for the "Chicago Style" idea, apart from its putting out the series of articles entitled "Chicago Style." There is nothing in the instant case analogous to the interviews in *Stillman*. The plaintiff's failure to allege that the Sun Times made affirmative misrepresentations about the origin of its "Chicago Style" series renders its Consumer Fraud Act claim identical to a copyright claim. See *Tensor Group, Inc. v. Global Web Systems, Inc.*, No. 96 C 4606 (N.D. Ill. August 11, 1999) (not reported in F. Supp. 2d).

■ Moreover, any claim of the plaintiff that the defendant misrepresented the source of the "Chicago Style" idea by the very act of publishing its "Chicago Style" series of articles is preempted under the Copyright Act. Although *Stillman* did not reach the issue of whether the misrepresentation of authorship naturally incident to the publication of the copied work could support a separate state law

claim, other cases have gone on to decide the issue. Every act of copyright infringement by its nature involves some misrepresentation as to the identity of the author. *Balsamo/Olson Group, Inc. v. Bradley Place Ltd. Partnership*, 950 F. Supp. 896, 898 (C.D. Ill. 1997). But this type of misrepresentation does not constitute a qualitatively distinct element that would remove the claim from the scope of copyright. "[A]n allegation of misrepresentation that is solely based in the alleged infringer's reproduction and sale of a work as its own creation does not qualitatively alter the nature of the infringement enough to remove the state claim from the preemptive scope of copyright law." *Goes Lithography Co. v. Banta Corp.*, 26 F. Supp. 2d 1042, 1048 (N.D. Ill. 1998). Accordingly, any claim by the plaintiff under the Consumer Fraud Act that the defendant misrepresented that it was the originator of the "Chicago Style" idea by putting out the "Chicago Style" series of articles is preempted.

Finally, in our view, even if some Consumer Fraud Act claim that the defendant took credit for the plaintiff's idea survived preemption, that claim would have been properly dismissed. The plaintiff's idea was for a television show that would promote a newspaper and tie in with articles from the newspaper. But the plaintiff has not alleged that the Sun Times produced its own television show or did anything with regard to television. The plaintiff cannot seriously claim that it came up with the idea of a newspaper writing about local entertainment events and celebrities. Moreover, the exhibits show that the series of articles put out by the Sun Times under the title "Chicago Style" focused on the fine arts, rather than the "lighthearted personality-driven features" that were to be the focus of the television show. Exhibits that conflict with allegations in a pleading negate those allegations. *First National Bank v. Shape Magnetronics, Inc.*, 135 Ill. App. 3d 288, 293, 481 N.E.2d 953, 956 (1985). Accordingly, the trial court would have been justified in dismissing the complaint after examining the exhibits even if some part of the claim was not preempted.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

GORDON and McBRIDE, JJ., concur.